**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00038-CHL**

TONY F.,[1]                                                                                     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[2]                                       Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Tony F. ("Claimant"). Claimant seeks

judicial review of the final decision of the Commissioner of Social Security ("the Commissioner").

(DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary, and Claimant also

filed a reply brief. (DNs 12, 12-1, 14, 15.) The Parties have consented to the jurisdiction of a

Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of

Appeals in the event an appeal is filed. (DN 8.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.      BACKGROUND**

On or about February 22, 2021, Claimant filed applications for disability insurance benefits

under Title II ("DIB") and supplemental security income ("SSI") under Title XVI of the Social

Security Act. (R. at 136-38, 143, 148-50, 157, 167, 412-29.) The applications alleged disability

beginning on January 8, 2021, due to brachial plexus, degenerative disc disease, numbness in

hands/inability to use right hand, neck pain, headaches, and stomach problems. (*Id*. at 19, 138,

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

[2] As Frank J. Bisignano is now the Commissioner of Social Security, he is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to change the case caption to reflect the substitution.

143, 150, 157, 480.)  Claimant's applications were denied initially and again on reconsideration. (*Id.* at 202-11, 213-20.)

At Claimant's request, Administrative Law Judge ("ALJ") Paula Goodrich ("ALJ Goodrich") conducted a hearing on Claimant's applications on March 3, 2022.  (*Id.* at 103-35, 221-25.)  After ALJ Goodrich added some additional exhibits to the record, Claimant requested and ALJ Goodrich conducted a supplemental hearing on July 26, 2022.  (*Id.* at 75-102, 571-74.) ALJ Goodrich issued an unfavorable decision on August 12, 2022.  (*Id.* at 164-90.)  Claimant appealed that decision to the Appeals Council, which granted the request for review and remanded the matter to an ALJ for further consideration of Claimant's irritable bowel syndrome ("IBS"). (*Id.* at 191-96, 335-37, 577-81.)

On remand, ALJ Dennis Pickett ("ALJ Pickett") conducted a new hearing on Claimant's applications on October 26, 2023.  (*Id.* at 46-69.)  Claimant attended the hearing by telephone with his non-attorney representative.  (*Id.* at 48, 326.)  An impartial vocational expert also participated in the hearing.  (*Id.* at 48.)  During the hearing, Claimant testified to the following.  Due to the brachial plexus injury he suffered at birth, he cannot write, carry anything, or manipulate anything with his right hand; he uses his left hand ninety percent of the time.  (*Id.* at 51.)  He has had issues with his neck for the past ten years and his lower back for the past four years.  (*Id.* at 52.)  Looking left, right, up, and down causes him neck pain.  (*Id.*)  Bending over and sitting too long causes him issues, and sitting too long causes his left leg to go numb.  (*Id.*)  He estimated he could only sit for five minutes before he would have to change positions, could stand for less than ten minutes, and that if he walked more than a quarter to half of a block, he would experience pain in his left side. (*Id.* at 52-53.)  He estimated he could only pick up ten or eleven pounds comfortably but that doing so repeatedly would cause him pain in his lower back and left arm.  (*Id.* at 53.)  He has experienced

2

constant headaches for the past ten years that are triggered by bright lights, noise, and moving his neck around. (*Id.*) When he has a headache, he has to lie down in a quiet room with no lights on, and he has to lie down due to a headache three to four times per week. (*Id.* at 54.) He has had issues with IBS over the past four years consisting of nausea and occasional vomiting. (*Id.*) He uses the bathroom at least five times a day and experiences pain in his lower abdomen. (*Id.*) He is trying a different diet and other medication to manage his IBS. (*Id.* at 54-55.) He experiences daily numbness in his hands, including in his left hand and arm on which he had carpal tunnel surgery. (*Id.* at 55.) His doctors have told him that the numbness is due to a pinched nerve in his neck. (*Id.*) He has trouble sleeping because of the numbness. (*Id.*) He doesn't drive because of his lower back and difficulty looking back and forth, and he had stopped working because he didn't feel safe driving with his neck impairment. (*Id.* at 55-56, 58.) He has been dealing with depression and is not motivated to do too much. (*Id.* at 56.) His wife keeps track of his medicine and appointments. (*Id.*)

ALJ Pickett issued an unfavorable decision on January 18, 2024. (*Id.* at 16-45.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, ALJ Pickett made the following findings. First, the Claimant had not engaged in substantial gainful activity since January 8, 2021, his alleged onset date. (*Id.* at 22.) Second, Claimant had the following severe impairments: degenerative disc disease, migraine, left upper extremity carpal tunnel syndrome and ulnar neuropathy status post release, status post birth brachial plexus injury to right upper extremity, and obesity. (*Id.*) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 26.) Fourth, the Claimant had the residual functional capacity ("RFC") to perform light work with the following exceptions:

no climbing of ladders, ropes, or scaffolds and occasionally climbing of ramps and stairs. He can have occasional exposure to vibration. He can work in noise level of three or less, as defined by the Selected Characteristics of Occupations. He can have no exposure to hazardous conditions such as unprotected heights or dangerous machinery. He can occasionally stoop, kneel, crouch, and crawl. He can frequently reach in all directions bilaterally except can occasionally reach overhead bilaterally. He can frequently handle, finger, and feel bilaterally. He can have no exposure to bright and flashing lights.

(*Id.* at 27.) Additionally at step four, ALJ Pickett found that Claimant was unable to perform his past relevant work as a delivery truck driver and washing machine repairer. (*Id.* at 35.) Fifth and finally, ALJ Pickett found that considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.*) ALJ Pickett concluded that Claimant was not under a disability from January 8, 2021, through the date of the decision. (*Id.* at 36.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on December 9, 2024. (*Id.* at 2-8, 409-11, 613-15.) At that point, ALJ Pickett's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2025); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on January 17, 2025. (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2025).

4

**A.    Standard of Review**

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B.    Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2025). In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[3] and

---

[3] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2025).

significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)     Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)     Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)     Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.     Claimant's Contentions

Claimant argued that ALJ Pickett erred in two ways. First, Claimant alleged that ALJ Pickett erred in his assessment of Claimant's mental impairments. (DN 12, at PageID # 1669, 1678-82; DN 12-1; DN 18, at PageID # 1708-10.) Specifically, he argued that ALJ Pickett erred at step two in determining that Claimant had only mild restrictions in concentrating, persisting, or maintaining pace. (DN 12, at PageID # 1678-80.) He also argued that ALJ Pickett erred at step four in determining Claimant's RFC because ALJ Pickett's RFC finding did not account for the mental restrictions found at step two and didn't explain the discrepancy. (*Id.* at 1680-82; DN 15,

6

at PageID # 1709-10.)  Second, Claimant alleged that ALJ Pickett erred at step four in rejecting Claimant's subjective allegations regarding his inability to use his right hand and the limitations associated with his neck impairment.  (DN 12, at PageID # 1699, 1682-86; DN 12-1; DN 15, at PageID # 1711-12.)  Claimant also argued that any remand ordered in this case should be for benefits as opposed to for further proceedings.  (DN 12, at PageID # 1686; DN 15, at PageID # 1712-13.)  The Court will consider each of Claimant's arguments below.

### 1.    Mental Impairments

Claimant argued that ALJ Pickett erred in his analysis of Claimant's mental impairments at steps two and four.  (DN 12, at PageID # 1669, 1678-82; DN 12-1; DN 18, at PageID # 1708-10.)  The Court will address these alleged errors separately.

### a)    Step Two

At step two, an ALJ determines whether one or more of a claimant's impairments singly or in combination are severe, meaning that the impairment or combination of impairments "significantly limit[] [his or her] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c). When evaluating a claimant's mental impairments at steps two and three of the sequential evaluation process, the regulations require an ALJ to follow a special technique known as the psychiatric review technique ("PRT").  20 C.F.R. §§ 404.1520a, 416.920a (2025).  Specifically, after evaluating whether an individual has a medically determinable mental impairment, the regulations require an ALJ to rate the degree of functional limitation resulting from a claimant's mental impairment(s) by reference to four functional areas: an individual's ability to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt or manage oneself.  *Id.* at §§ 404.1520a(b)-(c), 416.920a(b)-(c). These four areas are commonly referred to as the "paragraph B" criteria as they parallel the criteria

of paragraph B of the adult mental disorders listings.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §

12.00(A)(2)(b) (effective Oct. 6, 2023, to Feb. 17, 2025).  Claimant argued that ALJ Pickett's

determination as to the paragraph B criteria regarding his ability to concentrate, persist, and

maintain pace was not supported by substantial evidence.

As a starting point, the Court observes that an ALJ's failure at step two to find a particular

impairment to be severe generally does not constitute reversible error so long as the ALJ found

that the claimant had other severe impairments and moved on to the other steps prescribed by the

regulations.  *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see

also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003); *Nejat v. Comm'r of Soc.

Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).  This is because the determination that an impairment

is non-severe does not prevent an ALJ from considering it in his or her assessment of a claimant's

RFC; instead, an ALJ is required to consider both severe and non-severe impairments in assessing

a claimant's RFC.  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (2025).  Thus, "[t]he fact that

some of [a claimant]'s impairments were not deemed to be severe at step two is therefore legally

irrelevant."  *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *see also Emard v. Comm'r

of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (citing *Maziarz*, 837 F.2d at 244).  Here, ALJ

Pickett did find Claimant to have severe physical impairments—including degenerative disc

disease, migraine, left upper extremity carpal tunnel syndrome and ulnar neuropathy status post

release, status post birth brachial plexus injury to right upper extremity, and obesity—and proceed

to assess Claimant's RFC.  (R. at 22, 27.)  As such, the undersigned finds that any error by ALJ

Pickett in failing to assign greater limitations in the paragraph B criteria or to categorize Claimant's

mental impairments as severe do not alone constitute reversible error.  Nonetheless, here, ALJ

Pickett's step two conclusions are supported by substantial evidence.

ALJ Pickett determined that Claimant's depression, anxiety, and attention-deficit disorder/attention-deficit hyperactivity disorder ("ADD/ADHD") were nonsevere impairments that caused no more than minimal limitation in his ability to perform basic mental work activities. (R. at 24.)  Applying the paragraph B criteria, ALJ Pickett found that Claimant had no limitation in the areas of understanding, remembering and applying information; interacting with others; and adapting or managing oneself. (*Id.* at 24-25.)  But he found that Claimant had a mild limitation in concentrating, persisting, or maintaining pace. (*Id.*)  In his step two analysis, ALJ Pickett summarized Claimant's testimony at the hearing that he had problems with motivation and completing tasks and he needed reminders. (*Id.* at 23.)  ALJ Pickett also summarized Claimant's medical records relating to his mental impairments. (*Id.*)  ALJ Pickett noted that Claimant had been prescribed medication for depression, the dosage of which his provider adjusted at times. (*Id.* at 23 (citing *id.* at 920-960, 1224-1376, 1377-1404, 1494-1616).)  ALJ Pickett emphasized that Claimant's mental status findings had been generally within normal limits though he did note some instances in the record of abnormal findings. (*Id.* at 23 (citing *id.* at 111, 681, 883, 885, 888, 893, 897, 931, 1208, 1447, 1453, 1463, 1473, 1489, 1551).)  He noted that in December 2022, Claimant's depression was marked as "stable" and "in full remission" by Claimant's provider and that while Claimant had been referred for ADD/ADHD testing, Claimant had not completed the testing. (*Id.* at 23 (citing *id.* at 1551-52, 1578-79).)  He summarized that Claimant had only established outpatient mental health treatment in August 2023, and there was "no indication of any need for psychiatric emergency room or inpatient care." (*Id.* at 25 (citing *id.* at 1617-33).)  He generalized that Claimant "primarily had only conservative care of prescribed medications by [his] primary care provider, [and] it appears that the [C]laimant's emotional symptoms have been relatively maintained." (*Id.* at 25.)  He also noted that the state agency psychological consultant

9

at the reconsideration level had concluded that Claimant's mental impairments were nonsevere. (*Id.* at 25 (citing *id.* at 151-52).)  In support of his conclusion that Claimant had a mild limitation in concentrating, persisting, and maintaining pace, ALJ Pickett again cited Claimant's hearing testimony, the normal mental status findings in the record, and that Claimant had only recently established treatment with outpatient mental health services.  (*Id.* at 24-25.)  He also cited the fact that Claimant stopped work primarily due to physical problems; reported that he could "prepare simple meals, bird watch, and watch his children play in the backyard"; watched TV; completed household chores and folded laundry; would drive but not for long periods; and could pay bills and handle money.  (*Id.*)

Claimant argued that this analysis was unsupported by substantial evidence.  Claimant cited 2023 treatments notes from Regina Woods, APRN ("APRN Woods"), who found that Claimant met the diagnostic criteria for generalized anxiety disorder and major depressive disorder.  (DN 12, at PageID # 1679-80.)  Claimant argued that APRN Woods's notes supported a greater restriction on Claimant's ability to concentrate, persist, and maintain pace than found by ALJ Pickett.  He also emphasized that APRN Woods's records had not been reviewed by the state agency psychologist consultant, which he argued undermined ALJ Pickett's reliance on that opinion. (*Id.*)  But ALJ Pickett cited APRN Woods's records in his decision, noting that Claimant had only recently established mental health treatment in August 2023 "well after the alleged onset date." (*Id.* at 23, 25.)  ALJ Pickett also noted that Claimant had "some mood/affect findings," citing APRN Woods's examination.  (*Id.* at 23 (citing *id.* at 1620, 1632).)  Claimant cited only APRN Woods's records in support of his argument and did not call into question the other portions of ALJ Pickett's analysis.  In particular, he made no argument that ALJ Pickett's generalization regarding the proliferation of mental status findings within normal limits in the record.  Given this

absence and the other evidence cited by ALJ Pickett in support of his conclusion both as to severity and the paragraph B criteria challenged by Claimant, the Court finds ALJ Pickett's decision supported by substantial evidence. ALJ Pickett's paragraph B analysis more than surpasses the threshold for substantial evidence, which is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citations omitted) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.").

### b) Step Four

Claimant also argued that ALJ Pickett erred because his RFC finding did not account for the mild limitation he had found on Claimant's ability to concentrate, persist, and maintain pace at step two and did not explain the discrepancy. (DN 12, at PageID # 1680-82; DN 15, at PageID # 1709-10.) But Claimant has not identified—nor is the undersigned aware of—any authority *requiring* paragraph B limitations to be adopted into an ALJ's RFC determination. Instead, the cases cited by Claimant support that failure to adopt related limitations *can be* erroneous. After all, it is not automatic that a non-severe "impairment—either singly or in combination with a claimant's other impairments—does not impose *any* work-related restrictions." *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015). But it is equally true that "not every mild or moderate limitation signifies a compromised work ability." *Richardson v. Saul*, 511 F. Supp. 3d 791, 799 (E.D. Ky. 2021). And the Social Security Administration has defined the PRT as distinct and different from the RFC determination:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires

11

> adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996).  Thus, the facts of a particular case matter in determining whether an ALJ's discussion was sufficient.

Here, after making the step two findings detailed above, ALJ Pickett stated that he had "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (R. at 25.)  He also noted,

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(*Id.* at 26.)  Then, at step four, "[a]fter careful consideration of the entire record," ALJ Pickett found that Claimant had the RFC to perform a limited range of light work.  (*Id.* at 27.)  His decision included language that his RFC finding was based on his consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as any medical opinions and prior administrative medical findings.  (*Id.*)  However, ALJ Pickett did not assess any limitations related to Claimant's nonsevere mental impairments.  (*Id.*)  His analysis focused in large part on Claimant's allegations and treatment regarding his physical impairments.  (*Id.* at 28-34.)  Relevant to Claimant's mental impairments, ALJ Pickett did cite Claimant's testimony during the current and prior hearings that

12

he needs help with his activities of daily living like showering and dressing and that his spouse mainly does the house work. (*Id.* at 28.)  ALJ Pickett cited that in 2019, while receiving treatment for chronic headaches, Claimant had "normal mental status with good attention and appropriate fund of knowledge." (*Id.* at 29.)  As he had in his step two analysis, ALJ Pickett emphasized, "The claimant reported ongoing emotional difficulties but has only just recently established with outpatient mental health services." (*Id.* at 33 (citing *id.* at 1617-33).)  At the end of that same paragraph, citing the entirety of the section of the administrative record containing Claimant's medical records, ALJ Pickett observed, "It does not appear that a treatment provider has given the claimant any recent work restrictions or limitations." (*Id.* at 33.)  He also acknowledged the third party function report from Claimant's spouse that noted Claimant had difficulty with completing tasks and concentration but concluded that "[w]hile the layperson observations tend to echo the subjective reports of the claimant, the medical evidence on whole does not support greater limitation than reflected in the RFC defined herein above for the reasons discussed in detail above." (*Id.* at 34 (citing *id.* at 521-531).)

Based on this analysis, the Court finds no error in ALJ Pickett's discussion.  ALJ Pickett's comprehensive summary of the medical records related to Claimant's mental impairments at step two along with the evidence cited in his RFC analysis supported the absence of limitations in his RFC determination and obviated the need for further discussion of Claimant's mental functioning in his RFC analysis.  When combined with ALJ Pickett's statements that his RFC determination was based on "careful consideration of the entire record" and that in making his RFC finding, ALJ Pickett had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," ALJ Pickett's decision leaves no discrepancy between his step two and step four findings to be resolved.  Though

13

these latter statements are form language included in most ALJ decisions, they are not without meaning in a case such as this one and courts still do rely on them. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 715 F. Supp. 3d 994, 999 (E.D. Mich. 2024). These statements are particularly significant here because this is not a case where the ALJ's discussion did not address a significant body of contrary evidence. Claimant's argument did not detail any medical evidence supporting a need for greater limitations or supporting that his mental impairments affected his ability to perform work activities. Claimant cited to no evidence in the record to contradict ALJ Pickett's conclusion that his mental status findings were generally within normal limits with a few outliers apart from APRN Woods's notes discussed above. In sum, Claimant failed to provide any factual showing to substantiate that there was anything more for ALJ Pickett to discuss than he already did at steps two and four. In the absence of such a showing and in particular given the fulsome summary of the medical evidence related to Claimant's mental impairments at step two, the Court finds that ALJ Pickett's RFC analysis was appropriate, consistent with his obligations under the applicable regulations, and supported by substantial evidence.

### 2.      Subjective Allegations

Claimant also argued that ALJ Pickett erred at step four in rejecting Claimant's allegations regarding his inability to use his right hand and limitations associated with his neck impairment. (DN 12, at PageID # 1699, 1682-86; DN 12-1; DN 15, at PageID # 1711-12.)

20 C.F.R. §§ 404.1529, 416.929 provide that when forming an RFC, an ALJ must assess the claimant's subjective allegations regarding his or her symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a) (2025); SSR 16-3p, 81 Fed. Reg. 14166 (March 16, 2016); SSR 16-3p, 82 Fed. Reg. 49462 (Oct. 25, 2017) (revising SSR 16-3p as initially published to its current operative form). A claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone,

14

establish that he or she is disabled; there must be objective medical evidence that shows the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. *Id.* If the ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work. *Id.* at §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ should consider a number of factors including a claimant's daily activities; the location, duration, frequency, and intensity of a claimant's pain or other symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of claimant's medications; and any other measures a claimant may use to alleviate pain or other symptoms. *Id.* at §§ 404.1529(c)(3), 416.929(c)(3); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929). The regulations only require an ALJ to *consider* the pertinent factors; they do not require the ALJ to discuss all the factors in his or her opinion. *See Dutkiewicz v. Comm'r of Soc. Sec.,* 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss [claimant]'s work history when assessing his credibility . . . ."). However, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. at 49467.

Claimant argued that ALJ Pickett did not comply with these requirements. He emphasized that his allegations regarding his inability to use his right hand were attributable to his brachial plexus injury and that his allegations regarding his neck impairment were attributed to his cervical impairments. (DN 12, at PageID # 1683.) He argued, "The objective evidence prong of 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3) [wa]s clearly met by [Claimant]'s evidence, and [] ALJ [Pickett] fail[ed] to comply with the requirement that he discuss why these subjective allegations were found not to be persuasive." (*Id.*)  But the Court finds that ALJ Pickett's decision did contain such a discussion.

Here, ALJ Pickett found at step two that Claimant's status post birth brachial plexus injury to right upper extremity and degenerative disc disease were severe impairments.  (R. at 22.)  At step four, he found that Claimant's medical determinable impairments could reasonably be expected to cause Claimant's subjective complaints of pain or other symptoms.  (*Id.* at 29.)  However, ALJ Pickett determined that Claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and the other evidence in the record.  (*Id.*)  In making this conclusion, ALJ Pickett expressly considered Claimant's testimony.  ALJ Pickett summarized Claimant's testimony during the current hearing that he had had neck issues for ten years, had problems looking left-to-right or up-and-down, and his most recent job had ended because he "did not feel safe driving a vehicle due to his physical difficulties (such as his neck)."  (*Id.* at 28.)  ALJ Pickett also acknowledged Claimant's testimony during the current and two prior hearings regarding his brachial plexus injury including that he used his left hand as much as possible; could not write, carry, or manipulate small objects with his right hand; gets pain in his right arm if it is in certain positions for too long; did not have full range of motion in his right arm; and could not lift heavy objects with his right arm.  (*Id.*)  Then ALJ Pickett reviewed the record and explained why he did not believe his allegations were supported.

In his summary of the objective evidence as to Claimant's neck impairment, ALJ Pickett noted that Claimant had mild to moderate degenerative disc disease in his cervical spine shown on a MRI.  (*Id.* at 30 (citing *id.* at 670-746).)  He emphasized that Claimant had been referred to pain

management for his neck pain and had completed physical therapy during which he did report a decrease in his neck pain though he still reported some discomfort when driving. (*Id.* at 30 (citing *id.* at 681, 670-746).) ALJ Pickett recounted records from May and November 2021 documenting Claimant to have normal range of motion in his cervical spine though he did have tenderness in November. (*Id.* at 30-31 (citing *id.* at 762-812, 883).) In March 2022, ALJ Pickett noted, Claimant had increased pain with extension of his neck. and his neurosurgeon advised Claimant to have another MRI of his cervical spine. (*Id.* at 32 (citing *id.* at 1204-1218, 1405-1406).) That MRI showed multiple level disc degeneration but no disc herniation. (*Id.* at 32 (citing *id.* at 1204-1218, 1247, 1430).) Despite this, ALJ Pickett emphasized, Claimant's surgeon did not recommend Claimant have spinal surgery. (*Id.* at 32 (citing 1224-1376).) ALJ Pickett noted that Claimant's primary care provider prescribed a cream for Claimant's neck pain. (*Id.* at 32 (citing *id.* at 1282).) ALJ Pickett also noted that Claimant continued to follow up with his primary care provider for medication management and that those records indicated "some reported benefit with prescribed medications for his reported pain." (*Id.* at 33 (citing *id.* at 1494-1616).) ALJ Pickett then remarked that there was a gap in treatment before Claimant "reestablished" care with a pain management provider primarily for his degenerative disc disease. (*Id.* at 33 (citing *id.* at 1479).) ALJ Pickett stated in his review of the opinion evidence that the state agency medical consultants had limited Claimant to a range of light work but found it was reasonable to give Claimant "additional postural, environmental, and reaching/manipulative limitations" due to the findings made in some of the records after those opinions were offered including pain management, neurology, and primary care records discussed elsewhere in his decision. (*Id.* at 34 (citing *id.* at 138-47, 150-63).)

In his summary of the objective evidence as to Claimant's brachial plexus injury, ALJ Pickett noted that during Claimant's February 2021 neurosurgical assessment, the surgeon

17

reported Claimant's statements of weakness and decreased range of motion in his right upper extremity related to his injury at birth but documented normal sensation, normal muscle tone, normal reflexes, and normal muscle strength in his bilateral extremities. (*Id.* at 29-30 (citing *id.* at 670-746).)  ALJ Pickett noted that during a physical therapy assessment in April 2021, Claimant was found to be "unable to perform fine motor activity with right hand and only able to lift 90 degrees against gravity." (*Id.* at 30 (citing *id.* at 813-879).)  ALJ Pickett emphasized that Claimant indicated feeling stronger in his arms after physical therapy. (*Id.* at 30 (citing *id.* at 813-879, 1137-1203).)  ALJ Pickett summarized that during a June 2021 neurosurgical assessment, the surgeon again documented normal findings regarding Claimant's bilateral upper extremities including normal tone, normal strength, intact sensation to light touch. (*Id.* at 31 (citing *id.* at 1048-49).)  ALJ Pickett noted that records from a March 2022 surgical evaluation documented "some weakness, decreased reflexes, and atrophy in the right upper extremity[,] 'which was not a new condition.' " (*Id.* at 32 (citing *id.* at 1204-1218, 1405-1406).)  Regarding Claimant's treatment with his primary care provider, ALJ Pickett observed that that provider documented some "right upper extremity findings (consistent with his chronic brachial plexus injury)." (*Id.* at 33 (citing *id.* at 1447, 1453, 1463, 1479, 1489-90).)  In his assessment of the opinion evidence, ALJ Pickett found the opinions of the state agency medical consultants partially persuasive, determining that the opinions were well supported and "consistent with the record on whole through the date of the reviews including consideration of . . . the claimant's history of brachial plexus." (*Id.* at 34 (citing *id.* at 138-47, 150-63).)

ALJ Pickett concluded, "[C]laimant's statements about the intensity, persistence, and limiting effects of his symptoms[] [] are somewhat inconsistent because the extent of these do not appear fully supported by objective medical findings or extent of his overall clinical findings,

imaging, and/or extent of treatment history during the time under review." (*Id.* at 33.)  He emphasized Claimant's conservative care, lack of related surgery during the time under review, significant work history until the alleged onset date, that around January 2021 Claimant reported having painted for four days (concluding that activity "appear[ed] somewhat inconsistent with the extent of reported symptoms/functional limitations"), denied overnight hospitalization, had been medically advised to exercise, reported benefit from prescribed medications for his pain, and had not been giving any recent work restrictions or limitations by his treatment provider. (*Id.*)  The Court finds that these are appropriate reasons to discount Claimant's statements under 20 C.F.R. §§ 404.1529, 416.929.  In particular as to Claimant's brachial plexus injury, the Court notes that it was particularly appropriate for ALJ Pickett to rely on the fact that Claimant had a significant work history notwithstanding the injury he suffered at birth.

Claimant's brief offered no competing narrative or citation to relevant medical evidence contradicting ALJ Pickett's analysis. (DN 12, at PageID # 1683-86.)  Instead, in his reply, he criticized the Commissioner for trying to create a "post hoc rationalization" for ALJ Pickett's decision by "select[ing] excerpts from the ALJ's general summary of the evidence to suggest reasons that were not offered by the ALJ" (DN 15, at PageID # 1711-12.)  But neither the Commissioner's brief nor the Court's instant analysis does so, and Claimant provides no authority preventing the Court from reading ALJ Pickett's decision as a whole.  Substantial evidence supporting ALJ Pickett's conclusion as to Claimant's subjective allegations is found within his analysis in terms of the medical and other evidence to which he cited.  Claimant did not dispute ALJ Pickett's characterizations of the record or demonstrate that his analysis cherry-picked or inaccurately summarized the evidence on which he relied.  In the absence of such a demonstration,

19

the Court finds ALJ Pickett's analysis of Claimant's subjective symptoms supported by substantial evidence and compliant with the applicable regulations, 20 C.F.R. §§ 404.1529, 416.929.

### 3. Remand for Benefits

Having rejected Claimant's alleged errors in ALJ Pickett's decision, the Court finds no basis on which to remand this matter to the Commissioner. Thus, the Court does not reach Claimant's argument that any remand in this matter should be for benefits in lieu of for further proceedings.

## III. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

March 23, 2026

20